Good morning. May it please the Court, Jonathan Libby appearing on behalf of the Appellant Pedro Gumayagay. Your Honors, as an initial matter, I would note that there was a Booker error in this case, and so at a minimum, there needs to be a remand pursuant to Ammoline. What I'd like to address this morning is the District Court's request for a remand. While I believe that on our other issues there should be a full resentencing, but should you not agree with me on those issues, then we would want at least the Ammoline remand. Yes. I'd like to address the District Court's erroneous denial of the minor role and acceptance of responsibility adjustments. With respect to minor role, it's not entirely clear why the District Court denied the minor role adjustment after it had already agreed that it applied. It was recommended by the probation officer. There seemed to be some discrepancy, but it did not include the safety valve adjustment, which the government had recommended. So after that was cleared up, the Court then decided, well, I'm not going to apply the minor role adjustment at the request of the government. Now, to the extent that — Well, what's wrong with that? Well, he — because the record demonstrated that he qualified for the minor role adjustment, the Court had even — had already found that he qualified for the minor role adjustment. It's not a discretionary decision. If he qualifies for the minor role adjustment, it must be applied. So it's not clear why the Court reversed itself, other than the fact that it may have been confused. And — I don't think Judge Reel was confused. Well, I — perhaps Judge Reel was giving the sentence he had come up with beforehand. He had not included the safety valve, and so when it came down to it, he just still applied the original sentence that he had determined, even though it should have been two levels below. Now, clearly, the minor role adjustment — Which — is that necessarily error? Well, I think the one — If he had, in fact, never said anything about minor role and got to a conclusion that said, I conclude that minor role is not appropriate, I understand you have an argument saying, well, minor role is so clearly appropriate that that's error, but it seems to me what you're really saying in this case is that he didn't decide minor role was not appropriate until suddenly, toward the end, it seems to come through the side door. Well, no. He had, in fact, applied the minor role adjustment here. That was in — that was recommended by the Probation Office. It was in the pre-sentence report. He specifically said he was applying it. It was then, after it was pointed out to him, after he had imposed that sentence, it was pointed out, well, in fact, Your Honor, that's a mistake. That did not include the safety valve adjustment, which the government is recommending. He then went back, all right, I'm going to apply the safety valve adjustment. Government said, but we still object to the minor role. And he said, well, then at the request of the government, I'm going to apply minor role now. It's almost like he figured out what his bottom line was going to be and made the — the thing is, now that's exactly what he's allowed to do. Well, that's true, but that doesn't excuse the fact that it was an error in applying the law. And to the extent that he relied solely on the government's request, that was not a basis to deny the adjustment. And it was clear error, in fact, not to apply the adjustment in this case. In assessing whether a defendant qualifies for a minor role adjustment, the Court has to compare his culpability relative to all of the other participants in the offense. And these are both participants known and unknown. This was an international drug trafficking organization, from the Philippines to Thailand to Peru, and then where Mr. Bunyagai then as a drug courier only transported those drugs. He did. At the direction of the person who had recruited him as a drug courier. But that's not necessarily an unimportant role, because if he doesn't do it, then it doesn't come down. Well, but he was not – it was an interchangeable drug mule situation. Anybody could have been a courier. He specifically played no other role other than he went to these other countries and he then was given these drugs in a suitcase to carry back to Thailand and he had to stop over at L.A.S. But he... He went from where to where? He was recruited in the Philippines. He was from the Philippines. He was from the Philippines and he went to Thailand. He went to Thailand. And then he went to... To Peru. Peru. Peru is where the drugs were given to him in a suitcase. Did he make an intermediate stop after he left Thailand? No. He went from Thailand to Peru. From Thailand to Peru. And then he... He went to Lima. Right. And from Lima, where did he go? He was returning to Thailand and... Went to Thailand. But there was a stop over at L.A.S. L.A.S. He was going to change planes and that's where he was arrested at L.A.S. Oh, he was going to change planes? Yes. He was not planning on coming to the United States. He was not entering the United States. He technically came into the United States because he got off a plane to get on another plane. And that's where Customs stopped him. Well, that's what I mean if he's going from L.A.S. to back to Thailand. Is that what you're saying? Yes. Yes. Well, you don't have to go through security again. Customs pulled him off. I mean, he had to remove his luggage from the plane because he was changing airlines. So the luggage was removed from the plane. You're still back there. You're still, you know, behind the Customs line. Yes. You just get on another international flight and you go. As I understand, Customs thought it strange that he was from the Philippines but was coming from Peru and going to Thailand. That's strange, isn't it? Well, perhaps it is, Your Honor, and that's why Customs stopped him and that's where they discovered the drugs. And that's why, in fact, he was guilty of the offense. But when you compare his role to the others in the organization, those who recruited him and provided the drugs and sold the drugs and all of this, he was clearly less culpable than those other participants. And that's the standard. Merely is he less culpable than most other participants in the offense. And since we know about the person in the Philippines and in Thailand and these others in Peru, they were clearly more culpable than Mr. Gumiagai, and therefore, he qualified for a monorail adjustment. But he's a pretty key guy, isn't he? Well, he was interchangeable, Your Honor. He played – anybody could have been a courier. He just happened to be the guy who they recruited. You know, he was not – I mean, he was integral in the role in terms of any drug courier is technically integral when you're bringing drugs from one country to another. But that's not a basis to deny a monorail, as this Court's made clear. I mean, a drug courier is the typical case where a monorail – I mean, I would – He got the drugs in Peru, right? That's correct. You know, I think he probably qualified for a minimal participant adjustment, since he was probably the least culpable in the offense. It's certainly true there are cases where you've got the mule coming through the border from Tijuana, and they're usually identified with lesser roles. But do we have cases where the travel is quite as grand or ambitious as this? This is not somebody who's being paid 500 bucks to drive a truck across the border. This is somebody who's spending several days with plane tickets worth several thousand dollars, traveling thousands and thousands of miles in an activity that surely takes up his full time for an extended period of time. This isn't an afternoon's activity. That's true. Do we have cases where – granted, courier is a courier, but courier in this case is considerably more ambitious than our usual mule-across-the-border case. That's true. It's certainly true. It's not as if he simply was crossing the border from Mexico. That's right. But I don't think that – and I don't believe there are cases that necessarily have this type of scenario. But I don't think that means that he's any – he qualifies any less for a minimal adjustment when you compare his culpability to others in this international drug organization. I suspect there are others that we do not know who have similarly lower echelon activities, and indeed may have activities that take much less time. He's spending an awful lot of time on this project. Yes. Though in terms of getting paid, I mean, there's no evidence he was paid anything for any of this other than the cost of the trip. He got to travel and – Where did he sit on the airplane? I have no idea. First class? I do not know. He's not just doing this for the frequent flyer miles, though, we assume. Well, you know, it's not entirely clear. I mean, he may have simply wanted a trip. You know, but there's no evidence he did anything else but have this trip. Beg your pardon? Did he want a trip? He didn't want it. He wanted a trip. Yes. I thought he wanted a lottery. No, no. They offer us trips to Guam if we're going to go out and sit in Guam, and some judges take them. If I could move on to the acceptance of responsibility. Here it appears – it's unclear on the record why the Court denied the acceptance of responsibility adjustment. Well, maybe because he went to trial and denied everything that he previously acknowledged. Well, he went to trial, which he's allowed to do and still qualify for the acceptance of responsibility adjustment. This Court's made that clear. In the rare case, and ordinarily when you're putting up a legal kind of defense, that is, it's not a criminal offense, he went in and gave a story that was very different from what he'd previously told the agents, which he's now trying to cite to to say I accepted responsibility then even if I didn't do it during trial. Now, even if you go to trial to contest for factual guilt, this Court's made clear in the McKinney case, Moorbacher, if you go to trial to contest for factual guilt, you can still qualify for the acceptance of responsibility. The application note makes clear. You look primarily at pretrial conduct. Clearly, he confessed. He cooperated extensively in this case. He made phone calls to the people in the Philippines and Thailand. It led to a controlled delivery of drugs to these individuals. Extensive cooperation just in the McKinney and Moorbacher cases. And he did not get a severe sentence. Well, it's 64 months. 63 months, Your Honor. 63 months. Yes. Well, had these adjustments that should have applied been applied, he would have had two years less on the sentence, and that's what the guidelines would have come up with. Again, he extensively cooperated. The government, because of his cooperation after the trial, made clear he qualified for the safety valve, which meant he gave complete information. So this is where it's somewhat unlike Moorbacher, where in Moorbacher, the defendant, even though he had all of these same factors as Mr. Gumiagai, the only reason it was denied in Moorbacher was because at sentencing he continued to deny his involvement in the offense. Here, of course, he expressed contrition at the sentencing. Prior to sentencing, he gave all of the information. The government recommended a safety valve, declared that he in fact had given all of the relevant information that he had. This is clearly, when you look through the application note, all of the factors that go into giving acceptance of responsibility. And the mere fact that he went to trial, which is the reason why probation did not recommend it, is, in fact, not a basis to deny the adjustment. And I see I'm over time, so unless the Court has any further questions. Thank you. May it please the Court. Andrea Russi for the United States. Turning first to the acceptance of responsibility issue, the defendant here told the agents several different stories at the time of his arrest, and then he contested his factual guilt at trial. His entire defense at trial was that he did not know he was carrying drugs. The fact that post-trial, prior to sentencing, he finally admitted his guilt and the And this case is very similar to this Court's decision in Moorbacher, where the defendant cooperated, presented no defense at trial, did not contest the facts, but continually refused to admit the intent element of the crime. And this Court upheld the district court's decision not to give him acceptance of responsibility. Turning to the minor role issue, the facts in this case did not demonstrate defendant was entitled to a reduction for minor role. The fact that he was carrying 2.4 kilograms of cocaine in and of itself was enough for the Court to deny the minor role adjustment. In addition, defendant's travel was extensive, which was similar to the travel of the defendant went from Hong Kong to Taiwan to Korea to LAX with a substantial quantity of drugs. It's similar to what occurred here in defendant going from Peru to Thailand to LAX, and originally starting in the Philippines. For those reasons, the district court could correctly deny the minor role enhancement or reduction here. What's troubling about the minor role reduction is that the district court, as I look over the record, did, as defendant suggests, give every indication of recognizing and granting a minor role adjustment until he got to the bottom line, and the bottom line didn't add up and suddenly shifted gears without any explanation. Does that give you pause, or what should we do about that? It does, Your Honor. I agree that the way that it is somewhat troubling that the Court initially appeared to give the adjustment and then decided not to. However, we don't, I don't know what the Court was thinking perhaps when he said minor role. He meant safety valve, or perhaps he felt the defendant was not entitled to both, so when he elected to give safety valve, he didn't give minor role. It is, I agree that it is somewhat. Is that logical that those two are an either-or kind of proposition? Usually they run together more than they run separately. That's true, and the Court could have, he could have given both here. He elected not to, and it is not clear on this record as to his reason for doing that, but I think the facts do not support the minor role reduction, and for that reason, I don't think that it needs to be remanded. If the Court has no further questions. Thank you. Thank you. Thank you. All right. Your Honors, thank you. Just briefly, with respect to acceptance of responsibility, government suggested that defendant's defense at trial was that he didn't possess the drugs. Like the case you cited more about from McKinney, there was not any type of extensive defense in this case. It was minimal questioning of the government's witnesses. The defense called one witness, the case agent, only to testify regarding his cooperation with the authorities after he was arrested. All Mr. Gumiagai did was put the government to its burden at trial. Did the defendant testify at trial? Did not testify at trial. Only put the government to its burden, and certainly he can say, well, they didn't prove their case with respect to this element. That's not enough to deny acceptance of responsibility. And with that, unless the Court has questions, I'll submit. Thank you. Thank you very much. This matter is submitted.
judges: Pregerson, Clifton, Bybee